UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ALAN CROWDER,           )<br>                                    )<br>           Plaintiff,      )<br>vs.                              )           4:08-cv-0049-SEB-WGH<br>                                    )<br>                                    )<br>MICHAEL J. ASTRUE, Commissioner )<br> of the Social Security Administration, )<br>                                    )<br>           Defendant.    ) | |

**Entry Discussing Complaint for Judicial Review**

Alan Crowder ("Crowder") seeks judicial review of the discontinuance by the Commissioner of the Social Security Administration ("Commissioner") of his Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further consideration.**

**I. Background**

In a decision dated November 4, 2000, Crowder was found to be disabled beginning December 15, 1999, based on his non-Hodgkins lymphoma and degenerative disc disease which met the requirements of a listing. In 2004, the Commissioner determined that Crowder's disability ceased as of August 1, 2004. Crowder requested reconsideration, and following administrative denials, he requested a hearing. A hearing was held on April 25, 2006, in Louisville, Kentucky. Crowder appeared at the hearing. Crowder and a vocational expert testified at the hearing.

The Administrative Law Judge ("ALJ") issued his decision on November 27, 2006, finding that although Crowder suffered from severe impairments of chronic obstructive pulmonary disease, degenerative disc disease, a history of non-Hodgkin's lymphoma, hypertension, bronchitis, asthma, headaches, and polycythemia vera, his medical condition had improved and he could perform a significant range of work. The ALJ concluded that Crowder's eligibility for DIB ended as of August 1, 2004.

On February 14, 2008, the Appeals Council denied Crowder's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any

final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) the most recent favorable medical decision finding that Crowder was disabled is the decision dated November 4, 2000, which is known as the "comparison point decision" or "CPD;" (2) at the time of the CPD, Crowder had the medically determinable impairments of malignant lymphoma and degenerative disc disease of the lumbar spine which resulted in the residual functional capacity ("RFC") to perform less than a full range of sedentary work; (3) through August 1, 2004, the date Crowder's disability ended, he did not engage in substantial gainful activity; (4) the medical evidence established that, as of August 1, 2004, Crowder had medically determinable impairments consisting of chronic obstructive pulmonary disease, degenerative disc disease, a history of non-Hodgkin's lymphoma, hypertension, bronchitis, asthma, headaches, and polycythemia vera; (5) as of August 1, 2004, Crowder did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (6) medical improvement occurred as of August 1, 2004; (7) Crowder's medical improvement was related to his ability to work because it resulted in an increase in his RFC; (8) as of August 1, 2004, Crowder continued to have a severe impairment or combination of impairments; (8) based on the impairments present as of August 1, 2004, Crowder had the RFC to lift/carry 20 pounds occasionally and 10 pounds frequently, in an eight hour workday he could walk/stand for up to six hours and sit for six hours, he could not operate hazardous machinery or work at open heights due to his headaches, and he was further limited to work in a controlled air environment; (9) as of August 1, 2004, Crowder was unable to perform past relevant work; (10) on August 1, 2004, Crowder was a younger individual, had a limited education and was able to communicate in English; (11) beginning on August 1, 2004, transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Crowder was "not disabled," whether or not he had transferable job skills; and (12) as of August 1, 2004, considering Crowder's age, education, work experience and RFC based on the impairments present as of August 1, 2004, Crowder was able to perform a significant number of jobs in the national economy. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Crowder's disability ended as of August 1, 2004.

## II. Discussion

### A. Applicable Law

A claimant who experiences medical improvement related to his ability to engage in work may lose his eligibility to receive benefits if there is an improvement in the claimant's condition. The Social Security regulations define medical improvement as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or

continued to be disabled." 20 C.F.R. §§ 404.1594(b)(1).

> A recipient of benefits . . . may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such a finding is supported by- -
>
> (1) substantial evidence which demonstrates that- -
>
> (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
> (B) the individual is now able to engage in substantial gainful activity;
> . . .

42 U.S.C. § 423(f).

In reaching his decision to deny benefits, the ALJ followed the eight-step inquiry outlined in Social Security regulations which is used to determine whether a claimant's disability continues. (R. at 58-59, citing 20 C.F.R. § 404.1594(f)). The eight inquiries are the following:

> (1) Is the recipient engaging in substantial gainful employment? (If yes and there is no issue of a trial work period, the disability has ended.)
> (2) If not engaging in substantial gainful employment, does the recipient have an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? (If yes, the disability is found to be continuing.)
> (3) If no, has there been medical improvement in the condition which was originally found to be disabling? (If no, the disability is usually found to continue.)
> (4) If there has been medical improvement, is it related to the ability of the recipient to do work? (If no, disability is probably found to be continuing, subject to step 5.)
> (5) This step contains the exceptions to continuing disability even when no medical improvement is found in step 3 or the improvement is not related to ability to do work in step 4.
> (6) If medical improvement is shown, are the recipient's current impairments nonetheless severe? (If no, disability ceases.)
> (7) If the current impairments are severe, can the recipient do the work she did before determined to be disabled? (If yes, the disability ceases.)
> (8) If the recipient cannot do the work done in the past, can the recipient do other work?

20 C.F.R. § 404.1594(f).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

**B.  Analysis**

The ALJ determined that although Crowder continued to have severe impairments, there had been medical improvement and he was no longer disabled effective August 1, 2004. The ALJ determined that Crowder had the RFC to lift/carry 20 pounds occasionally and 10 pounds frequently, in an eight hour workday he could walk/stand for up to six hours and sit for six hours, he could not operate hazardous machinery or work at open heights due to his headaches, and he was further limited to work in a controlled air environment.

Crowder's primary argument is that the ALJ erred in failing to accord adequate weight to the opinion of treating physician Dr. Lee. The ALJ gave "little weight" to the finding made by Dr. Lee in March 2006 that Crowder's polycythemia vera along with his chronic obstructive pulmonary disease made him unable to perform any gainful employment. (R. at 63). The ALJ noted that Dr. Lee had opined that these impairments would require Crowder to need constant rest periods and that Crowder could not climb, crawl, or walk for prolonged distances, he had very limited use of the upper body muscles and he could not be around dust, particles, chemicals or temperature changes. *Id.* The ALJ rejected this opinion "because it is inconsistent with the other evidence of record which shows that the claimant is capable of performing light work," and because it was also inconsistent with Crowder's own activities of daily living. *Id.*

"A treating physician's opinion about the nature and severity of the claimant's impairment is normally given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with substantial evidence in the record." *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009) (internal quotation omitted) (citing 20 C.F.R. § 404.1527(d)(2)). Crowder argues that Dr. Lee was the only physician to consider his breathing problems in combination with his blood problems. Crowder points out that the ALJ did not reject Dr. Lee's findings because they were not well-supported, but because they were "inconsistent with the other evidence." Crowder contends that the ALJ failed to specify what evidence was inconsistent.

The ALJ stated that he gave "great weight" to the findings made in the Hearing Officer's Decision. (R. at 63). In that decision, it was determined that Crowder had the RFC to lift/carry 20 pounds occasionally and 10 pounds frequently, he could walk/stand for up to six hours and sit for six hours, but could not operate hazardous machinery or work at open heights due to his headaches. *Id.* (citing R. at 383-94). The Hearing Officer's Decision was dated January 10, 2005. (R. at 393).

4

The ALJ also gave weight to the findings made by Dr. Gardner during a June 2006 consultative examination. (R. at 63). Dr. Gardner opined that Crowder could lift/carry 25 pounds occasionally and 20 pounds frequently, could stand/walk for about six hours and sit for about six hours, could occasionally climb, balance, kneel, crouch, crawl, and stoop, and he should avoid temperature extremes, dust, humidity, wetness, fumes, odors, chemicals, and gases secondary to chronic obstructive pulmonary disease. *Id.*

The opinions of the Hearing Officer and the consulting physician differ from that of Dr. Lee primarily with respect to Crowder's need for rest and whether he could walk or stand for prolonged periods of time. Dr. Lee explained that the condition of polycythemia vera caused Crowder's body to accumulate too many red blood cells and too much hemoglobin. (R. at 751). He further explained that part of the process of making more hemoglobin, which carries the oxygen, was a normal response to Crowder's COPD to overcome his oxygen deficit, however, beyond a certain point it "becomes very dangerous and induces 'thickened blood' which actually causes more shortness of breath, can cause angina and may lead to blood clot formation." *Id.* Dr. Lee concluded that Crowder's polycythemia vera along with his COPD would require constant rest periods, no climbing, no crawling, walking only very short distances, and not being around dust, particles, chemicals or temperature changes. *Id.*

Neither Dr. Gardner nor the Hearing Officer's Decision addressed the combination of Crowder's COPD and polycythemia vera. The Hearing Officer noted that at the first of the year (2004), Crowder's hemoglobin "started going through the roof," and that Crowder had had to have phlebotomies beginning in February 2004. (R. at 402). The Hearing Officer further noted that the polycythemia caused Crowder to have headaches "pretty much around the clock." *Id.* In June 2006, Dr. Gardner noted the presence of polycythemia but stated that the records Crowder presented did "not document any hematocrit greater than 52." (R. at 860). While this finding is accurate, it does not conflict with Dr. Lee's discussion as to the dangers of polycythemia vera and the serious consequences of the symptoms caused by the combination of COPD and polycythemia vera.

In addition, there is no indication that Dr. Gardner considered Crowder's headaches. The vocational expert testified that if Crowder's testimony were credited that he had a headache every day which required from one to three hours to recover, all jobs would be eliminated. (R. at 151). As noted, even the Hearing Officer's Decision acknowledged that Crowder had constant headaches caused by the polycythemia. The polycythemia and headaches were "new" conditions, beginning in early 2004. Based on the substantial evidence supporting the presence and seriousness of the headaches, the ALJ's failure to evaluate the vocational expert's testimony in this regard taints the ALJ's findings.

The ALJ also supported his rejection of Dr. Lee's restrictions by concluding that Crowder's daily activities were inconsistent with Dr. Lee's opinion. The ALJ stated that Crowder was able to visit his grandson and watch television, cook, do dishes, make a bed, do laundry, dust, and occasionally sweep. (R. at 63). Crowder drove two to three times per

week. *Id.* The ALJ also noted treatment records which showed that Crowder had performed remodeling at home in June 2005. *Id.* The ALJ stated that his RFC evaluation granted Crowder "every benefit of the doubt with regards to his subjective complaints." *Id.*

The Seventh Circuit has warned that reliance on a claimant's minimal daily activities does not form an adequate basis to discredit his allegations of disability. *See Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir. 2004) (ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week"); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). None of Crowder's activities required sustained activity, strength or mobility. Crowder testified that he experienced difficulty breathing even when he did not exert himself. (R. at 138). This greatly restricted his ability to walk. *Id.* He stated that he stopped mowing his lawn himself because although he used to be able to mow the lawn in 20 minutes, his increased breathing problems caused it to take two hours. (R. at 133). Crowder further testified that if he stood for more than half an hour, his legs would either go numb or would knot up and throb. (R. at 135). The ALJ's finding that Crowder could walk or stand up to six hours in an eight hour day does not give every benefit of the doubt to Crowder's testimony.

The remodeling work referenced by the ALJ was not discussed during the hearing. The record reveals that Crowder was admitted to a hospital on June 8, 2005, and was treated for bronchspasm and airway management. (R. at 695). The hospital admission record states that Crowder had been doing remodeling at home using epoxy for floor tiles, and he was taken to the emergency room with complaints of increased shortness of breath and wheezing. *Id.* Crowder was treated for seven days and showed gradual improvement until the date he was released, June 14, 2005. *Id.* The record does not contain sufficient details as to the type of work Crowder performed, for how long, the type of exertion it required, or whether he had assistance, from which a trier of fact could infer the amount of activity the "remodeling" required. Rather, the record shows that Crowder's attempt to work with epoxy resulted in difficulty breathing sufficient to require a week in the hospital. Substantial evidence does not support the ALJ's inference that Crowder's attempt to do some type of tile work at home signified his ability to perform substantial gainful activity. In sum, Crowder's daily activities do not support a finding that Crowder could perform full time work at even a light level of exertion. The ALJ's conclusion to the contrary is not supported by substantial evidence.[1]

---

[1] Crowder further asserts that the ALJ should have found that Crowder's lymphoma and breathing condition met Listing 7.09 through Listing 3.02A (dealing with COPD). Crowder, as the claimant, "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). The Commissioner responds that even though arterial blood gas studies were not performed, the FEVI values of record showed that Crowder's pulmonary functions did not satisfy the requirements of Listing 3.02A. Crowder has not shown that all of the criteria of the listing could have been

The ALJ's rationale for not giving Dr. Lee's opinion controlling weight is not supported by substantial evidence. Under these circumstances, the ALJ failed to build an accurate and logical bridge between the evidence and his conclusions. *Ribaudo,* 458 F.3d at 584; *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir.2003); s*ee also Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . .. [and to enable] us to trace the path of [his] reasoning") (internal quotation omitted).

### III. Conclusion

For the reasons discussed in this Entry, the ALJ's conclusion that Crowder was no longer disabled as of August 1, 2004, is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  06/09/2009

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

satisfied, and therefore, this objection fails.